Carl Wescott
PO Box 1906
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000

FILED #100 ifp nb
APR 17 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | |
|---|---|
| CARL A. WESCOTT, <br><br> Plaintiff, <br><br> vs. <br><br> HAROLD P SMITH & SMITH & SMITH LLP <br><br> Defendants. | Case No. CV 19-2084 JST <br><br> **PLAINTIFF'S VERIFIED COMPLAINT FOR AIDING AND ABETTING SECURITIES FRAUD, DECEPTIVE ACTS AND FRAUDULENT CONCEALMENT** |

Plaintiff Carl A. Wescott, proceeding *pro se*, complains of Defendants Harold P Smith ("Smith") and Smith & Smith LLP ("Smith & Smith") and in support of his complaint, the Plaintiff states as follows:

**Parties and Venue**

1. The Plaintiff is an individual who resides in San Francisco.

2. Defendant Harold P. Smith ("Smith") is a licensed California attorney who practices law in Oakland and lives in the Bay area.

3. Defendant Smith & Smith, LLP ("Smith & Smith") is a California Limited Liability Partnership engaged in the practice of law in Oakland. All acts of Smith complained of herein were undertaken as Principal and Agent of Smith & Smith.

4. Venue is proper in this District as the acts of fraud, concealment and aiding and abetting securities fraud of which Plaintiff complains were committed in connection with litigation pending in San Francisco Superior Court. The original Fields acts of fraud were in San Francisco, with a San Francisco company and contracts signed in San Francisco. The Defendants routinely conduct their law practice in San Francisco.

**The Underlying Acts of Fraud**

5. This is a case radiating from the larcenous schemes of John Fields ("Fields"), who has defrauded investors at least in connection the Transfinity Group ("TFG") a now dissolved California LLC and First Capital, a publically traded REIT. The Plaintiff was one of the investors defrauded in connection with TFG. Fields took investor money on the premise that TFG had valuable intellectual property and contracts in force as well as a merger partner that, at various times, was on the cusp of buying out TFG and/or had in fact done so. These statements were all materially and culpably false. Indeed, in testimony under oath on October 16th, 2018, Fields admitted that not only was the Transfinity Group, LLC not in contract for a merger with Easterly Capital, but that a merger had never even been discussed. The Plaintiff sued Fields in Superior Court in this Circuit, case number CGC-17-558198.

6. Defendants were engaged to defend Fields in that case. Exceeding the general protection of the litigation privilege, the Defendants specifically violated California Corporations Code 25401 et seq by engaging in acts of perjury and obstruction to conceal discoverable materials pointing to Fields' fraud thus crossing the line from defending to abetting their criminal client. Upon information and belief, these acts were further undertaken for the

PLAINTIFF'S VERIFIED COMPLAINT FOR AIDING AND ABETTING                                 2
SECURITIES FRAUD, DECEPTIVE ACTS AND FRAUDULENT CONCEALMENT

purpose of protecting a pay-out due Fields from First Capital whom Fields also defrauded as a fiduciary and Officer.

### (a) The TFG Fraud

7. The Plaintiff began performing services as a consulting professional for Fields and TFG in 2013. In November and December of 2014, Fields began telling investors that a merger partner was about to inject at least $100 million into TFG. The Plaintiff, on the strength of these representations, was induced to work for less money than he would have expected on the promise of valuable equity in TFG. The Plaintiff was not only directly told about the merger by Fields but he heard Fields "pitch" other investors over the phone concerning the merger.

8. In the last months of 2014 and through the first half of 2015 Fields made a series of related representations to both the Plaintiff and other TFG investors (both verbally and in writing) including to Glen Howard and Ken Matusow. Fields' specific representations included the following:

   (a) That a merger partner owned by the Koch Brothers was about to invest $100 million in TFG;
   (b) That the merger partner had (at least by April of 2015) in fact made the $100 million investment in TFG.
   (c) That Fields was not taking any personal compensation from TFG until investors saw a return in order to ensure that his interests were aligned with investors;
   (d) That TFG was entitled to large and recurring contractual "cash flows" generated by securitized environmental savings by its customers (collectively "Fields' Representations").

9. Fields' Representations were knowingly false when made. There was no merger transaction that ever closed or was ever anywhere near closing. TFG had no locked in contractual cash flows; its proprietary financial product was neither protected by patent

**PLAINTIFF'S VERIFIED COMPLAINT FOR AIDING AND ABETTING SECURITIES FRAUD, DECEPTIVE ACTS AND FRAUDULENT CONCEALMENT**     3

nor feasible or attractive to its prospective customers. Upon information and belief, Fields was scurrying to personally pocket every investor dollar he could before inevitably dissolving TFG. In short, Fields was utilizing classic "pump and dump" bucket shot tactics. This is a quotidian case of securities fraud, neither particularly intricate nor novel.

10. On March 31, 2015, Fields sent an email to the Plaintiff, asking whether he could find an investor in "contractual cash flows". Fields transparently intended to ensnare the Plaintiff with his offer and, to the Plaintiff's present discomfiture, he was successful. Fields' tactics were not novel but he executed his deceptions flawlessly, delivering a smooth, practiced pitch.

11. The deal Fields proposed involved an investment of $70,000 for a pay-out of $550,885 in "contractual cash flows" over 3 years. The instrument as described by Fields was a security within the definition of federal law 15 USC 77 (a) (1) and California state law California Corporations Code 25019.

12. The Plaintiff confirmed in writing to Fields that the return he promised was guaranteed. Based on Fields' guarantee the Plaintiff borrowed and paid $35,000 with the understanding that he would invest a second $35,000 in coming months. For the investment he made, Fields promised the Plaintiff a return in excess of $275,000.

13. At Fields' request, even though his initial email appeared to describe the cash flows as representing a corporate asset, the Plaintiff handed Fields a cashier's check made personally payable to him in the amount of $35,000. At the time, Plaintiff trusted Fields and believed that he would not ask for a personal payment to which he was not entitled.

14. As the Plaintiff subsequently discovered, the cash flows, like the merger transaction were fictive. When the Plaintiffs' promised "cash flows" failed to even trickle, he deferred

investment of the second $35,000. But Fields was philosophical about the deferral and appreciative of the $35,000 he had successfully scammed from the Plaintiff. Eventually, Fields stopped communicating with investors and dissolved TFG without providing any financial accounting or statement despite the heated requests of cheated stakeholders.

(b) The First Capital Fraud

15. Fields served in a number of capacities for First Capital, a public REIT managing hundreds of millions of dollars. He was even styled "Chief Executive Officer" for 6 months between September of 2017 and March of 2018 when his abrupt resignation was announced without explanation.

16. In 2016, Fields, as agent for First Capital, with a commensurately impressive title and expense account, was chiefly responsible for negotiating the purchase of four hotels in Mexico (Hacienda Cerritos, Surf Club, Beach Club and Mayan Village) then owned by Roger Pollack a friend and frequent business partner of the Plaintiff. The Plaintiff was involved in the contemporaneous discussions. The parties had arrived at a purchase price of $12,000,000 which Fields promptly inflated by $1,000,000 by frankly and openly soliciting a bribe. With the price-padding of the bribe, the otherwise mutually advantageous transaction unwound. The Plaintiff can produce witnesses and sworn testimony, including his own, to corroborate Fields' solicitation of a bribe.

17. The transaction is significant because it is not aberrant. It is Fields' signature style to solicit bribes and divert revenue whenever he is in a position of corporate responsibility. He is a confident and well-seasoned white collar criminal.

18. After his March 2018 resignation from First Capital, Fields anticipated a large pay-out whether under a golden parachute or deferred compensation arrangement. Fields blithely announced this to the Plaintiff over the course of a personal meeting in late March of 2018, during which settlement of the Plaintiff's pending litigation against him was fruitlessly discussed. Fields also disclosed that his attorney Smith was deferring billings in the case brought by Plaintiff in exchange for receiving "the lion's share" of the pay-out from First Capital. Exposure of rampant securities fraud in connection with Fields' TFG stewardship, or cavalier bribe solicitation during his tenure as a First Capital executive would have thus been regarded as especially untimely by Fields and by Smith.

(c) The 1099 Fraud

19. Fields intentionally and fraudulently issued 1099s for the tax years 2013 and 2014 overstating the Plaintiff's income by an aggregate of approximately $18,000.

20. As a direct result of Fields' intentionally false filings, he was and is civilly liable to Plaintiff under 26 USC 7434.

**Smith's Acts of Concealment & Aiding & Abetting**

21. Fields was entitled to a vigorous legal defense but he was not entitled to benefit from acts of perjury and obstruction. The Plaintiff filed his lawsuit on or about April 17, 2017. There was a long delay in Fields' response and the Plaintiff obtained a Default that was eventually vacated by Smith, claiming attorney error. Upon information and belief, Smith lied in his declaration to the Court about his attorney error, and Smith had not even been hired by Fields nor paid a retainer to represent him in the earlier time period. Upon

information and belief, the delay itself was part of Smith's scheme to cover-up Fields' fraud to give him time to negotiate the pay-out from First Capital.

22. Fields and Smith were now *de facto* partners in their scheme to extract a large pay-off from First Capital. Smith faced a number of significant obstacles in his sprint to this joint pay-day:

   (a) Fields' March 31, 2015 email unmistakably described a corporate asset which Fields suggested "the Company" might sell. Yet Fields personally pocketed $35,000 for the asset;
   (b) Other TFG investors were beginning to complain to Fields. Attached as Exhibit "D" is one such complaint;
   (c) Fields' lies were not subtle or elaborate and disclosed positively pre-adolescent time-preferences. A wholly imaginary $100M merger had been announced to investors. This would prove difficult to explain;
   (d) TFG financials either did not exist or would disclose multiple cash rake-offs from Fields who had supposedly deferred his personal compensation;
   (e) The most cursory examination of virtually any episode from Fields' career in financial services would likely uncover bribes, bribe solicitations, material lies, misappropriation and serial breaches of fiduciary duty on the part of Fields.

23. Put simply, Smith was defending a lazy and sloppy con artist and his challenge was to keep the lid on until the First Capital lion's share came his way. He could only do this by entirely obstructing proper discovery in the Plaintiff's case against Fields.

24. Conjunctively, Fields had launched a new career as a "blockchain expert" with AC3. Fields was attempting to attract investors to AC3. Smith worked feverishly to prevent any compromising information from emerging concerning Fields that could potentially interfere with his ability to attract investors.

25. In 2016, the Plaintiff had been adjudicated a vexatious litigant. He is about to win his appeal in appellate court over that designation.

26. The Plaintiff is also a *pro per* litigant. The Plaintiff was formerly a highly successful technology entrepreneur and real estate investor with many millions of dollars in capital

PLAINTIFF'S VERIFIED COMPLAINT FOR AIDING AND ABETTING    7
SECURITIES FRAUD, DECEPTIVE ACTS AND FRAUDULENT CONCEALMENT

assets. The real estate meltdown coupled with a contentious divorce have temporarily reduced the Plaintiff to food stamps and near homelessness, where he has been sleeping in an office. Fields was aware of the Plaintiff's precarious situation at the time he swindled the Plaintiff out of $35,000 making his predation all the more detestable. Smith was aware of all these circumstances.

### (a) Smith's Misrepresentation For Purpose of Obtaining a Bond

27. Smith's initial tactic was to file for the imposition of a punitive bond under CCP 391.1 that he knew the Plaintiff could not pay. This in itself would represent at worst a sharp elbow thrown in the course of a heatedly contested rebound. But Smith was not entitled to commit perjury or consciously make material misstatements for the purpose of concealing Fields' acts of securities fraud.

28. In connection with his request for a bond, Smith submitted an affidavit. A true and correct copy of Smith's affidavit is attached hereto as Exhibit "E". Smith's affidavit asserts, under penalty of perjury, that he planned to take 12 depositions in Fields' defense.

29. Smith's affidavit is perjurious. In the five months since the filing of his affidavit, with a trial date looming in October, Smith has taken no depositions and only discussed noticing one out of state deposition of a (purported) "witness" whose identity was not known to Smith at the time he signed his affidavit.

30. In December 2017, Smith emailed the Plaintiff stating that on the basis of new information he intended to take *fifty* depositions in defense of Fields – e.g. including the deposition of every investor in TFG. Although this statement was not made under oath, it

PLAINTIFF'S VERIFIED COMPLAINT FOR AIDING AND ABETTING SECURITIES FRAUD, DECEPTIVE ACTS AND FRAUDULENT CONCEALMENT

8

was a material misstatement intended to mislead and intimidate the Plaintiff for the purpose of concealing the evidence of Fields' securities fraud. Moreover, since the statement was made in violation of California Business & Professions Code 6068d, prohibiting attorneys from making false statements, it was unlawful if not precisely perjurious A true and correct copy of Smith's email to Plaintiff is attached hereto as Exhibit "G".

31. Smith's claims concerning necessary depositions were, in sheer recklessness, roughly commensurate with his client's compulsive lies to his investors. At the time Smith made the (perjurious) claim that he claimed to take twelve depositions, Smith was intensely aware of the fact that no witness was likely to testify to his client's probity; that every witness he deposed was likely to uncover some new outrage by his client; and that the slightest development of the factual record would be to his client's disastrous disadvantage. At the time Smith made the utterly preposterous claim that he intended to separately depose each investor in TFG he knew that the overwhelming majority of such investors were hostile to his client who had run through their money with no explanation. Unless Smith's litigation strategy was to commit juristic seppuku he knew that would not depose a single TFG investor. Consistent with this knowledge, Smith failed to notice a single deposition over the next four months.

32. The Plaintiff emphasizes that he respects Fields' right to a vigorous defense. In this case however, Smith committed perjury and transgressed 6068d for the sole purpose of averting a disposition on the merits and the disclosure of properly discoverable materials that would amply demonstrate ongoing securities fraud both against TFG investors and, in all probability, First Capital.

### (b) Smith's Obstruction of Discovery

33. In January of 2018, the Plaintiff served five sets of discovery on Fields through his attorney Smith. The sets of discovery consisted of Requests For Admission ("RFAs") Requests For Production ("RFPs") and Interrogatories.

34. Despite the fact that Fields, in the course of February settlement discussions, personally assured the Plaintiff that he had "worked hard" to prepare responses to the Plaintiff's discovery requests, Smith did not permit a single prepared response to be provided to the Plaintiff.

35. Fields' "responses" to the Plaintiffs RFAs, prepared by Smith are attached hereto as Exhibit "H" and are merely exemplary of Smith's obstructive tactics. The "responses" consist entirely of Objections and include the following ludicrous quibbles:

    (a) The term "cash flows" – used in Fields' own March 31, 2015 to Plaintiff – is vague and ambiguous;
    (b) The *year 2015* is "vague and ambiguous" making it impossible for Fields to admit or deny he received a cashier's check from the Plaintiff at any point in that calendar year;
    (c) The terms "proposed a deal" are vague and ambiguous;
    (d) The term "over-1099ing" is vague and ambiguous – though Smith later indirectly conceded in an email that he understood the term;
    (e) The terms "split the transaction" are vague and ambiguous;
    (f) The terms "issued or approved" a 1099 are vague and ambiguous.

36. Fields' "Responses" to the Plaintiff's interrogatories, prepared by Smith, are attached hereto as Exhibit "I and are made a part hereof and incorporated herein for all purposes. The Responses, again consisting entirely of quibbling Objections are similarly obfuscatory.

37. Smith admitted that filing such Objections was uncharacteristic of his approach to litigation. Attached hereto as Exhibit "J" is an email from Smith to Plaintiff conceding that he did not ordinarily fight over discovery.

38. In this case Smith's purpose in "fighting over discovery" was specifically and expressly to suppress the disclosure of documents that would have uncovered Fields' securities fraud. <u>That fraud is a work-in-progress as defrauded TFG investors still clamor for financial statements or an explanation of the abrupt dissolution of TFG on the heels of a purportedly consummated $100M merger.</u> To be clear as possible, Fields *continues* to defraud TFG investors by means of omission and concealment and Smith's obstruction of discovery is calculated to assist him in that object.

39. Conjunctively, Smith and Fields are scheming to withhold disclosures that would be material to First Capital in negotiating Field's pay-out and/or would dissuade investors from backing AC3. This represents at least a breach of fiduciary duty by Fields (aided, abetted and, indeed master-minded by Smith) and possibly related securities fraud to the extent that it involves a cash-out of First Capital equity by Fields or investors pouring money into AC3 without being aware of Fields' checkered history or TFG debacle.

   (c) **Smith's Frivolous Defense**

40. Smith purported to defend on the grounds that the Plaintiff could not contradict a "contemporaneous writing" that has been rejected by the Plaintiff. There is no legal authority for such a proposition in any jurisdiction. Indeed, California allows fraud cases to proceed even when the putative fraudulent representation contradicts the express terms of a *signed contract. Riverisland Cold Storage Inc. v. Fresno-Madera Production Credit Association*, (2013) 55 Cal.4th 1169.

   **(d) Smith's service of documents**

41. Upon information and belief, Smith also faked proofs of service, and Smith also lied under penalty of perjury on many occasions (at least 6), regarding service of documents.

42. Indeed; after the Plaintiff pointed out five (5) perjurious proofs of service, Smith then sent new ones for those five. It seems logical to conclude that Smith sending five new proofs of service after the original five were highlighted as ones where Smith lied under penalty, is in itself an admission of guilt that he did indeed commit perjury on those particular five (5) proofs of service.

43. In the alternative, a particular document can only be served from one time and place. Smith clearly committed the crime of perjury. Perjury is a federal offense under 18 USC 1621 and federally, provides for a prison sentence of up to 5 years per count (4 years in California under Penal Code 118).

44. Perjury is a serious offense, as it can be used to usurp the power of the court, as Smith has attempted to do on many occasions, beginning with his declaration under penalty of perjury for the bond he wished to impose upon the Plaintiff, attempting to restrict his Constitutionally protected (including under the First and Fourteenth Amendments) petitioning rights. For an attorney to do so seems particularly inapropos. The Plaintiff will be providing all pertinent facts to the California bar, but requests that this Court refer this case to the appropriate San Francisco jurisdiction District Attorney for prosecution.

**Count I: Liability Under California Corporation Code – 25504, 2554.01**

45. Plaintiff realleges paragraphs 1-44 as if fully set out herein.

46. Fields is a person liable to the Plaintiff under California Corporations Code 25401 for committing fraud in connection with the sale of a security. Specifically, Fields defrauded the Plaintiff by means of Fields' Representations as set out in paragraph 7 (a) thru (d).

47. Pursuant to California Corporations Code 25504, the Defendants directly or indirectly control Fields and are intentionally and materially assisting with his acts of securities fraud by wrongfully withholding materials relevant to a determination of the value of Plaintiffs' securities.

48. The specific provisions of 25504 in this case prevail over the general provisions of CCP 47, codifying the Litigation Privilege, even though the violations took place in the course of conducting litigation.

49. Smith, through at least the following acts, knowingly and materially assisted Fields in covering up and consummating his securities fraud against the Plaintiff:

    (a) Perjuriously swearing to the Court that he intended to take twelve depositions and making the misstatement for the sole purpose of imposing a bond that would enable Fields to conceal inculpatory documents;
    (b) Misstating his intentions, in a communication to the Plaintiff, to take fifty depositions for the purpose of deceiving and misleading the Plaintiff, in violation of 6068d and 25504;
    (c) Interposing ludicrous bad faith Objections to the Plaintiff's proper discovery requests and inducing Fields to falsely state that he did not understand terms that he in fact understood for the sole purpose of assisting Fields in the concealment of inculpatory documents. (Collectively "Smiths' Cover-up".)

50. Smith assisted Fields knowingly, intentionally, and with the objective of obtaining independent financial gain, e.g. the "lion's share" of the First Capital compensation.

51. The Plaintiff has been damaged by Smith's Cover-up in violation of Corporations Code 25504 by losing his Expectancy of recovering in excess of $275,000 in cash flows from the fraudulent securities marketed by Fields.

### Count II Business & Professions 17200 – Deceptive Acts

52. The Plaintiff realleges paragraphs 1-44 as if fully set forth herein.

53. The acts and omissions constituting Smith's Cover Up represent Deceptive Practices within the meaning of California Corporations Code 17200. The specific statute in this case controls over the general litigation privilege in CCP 47.

54. Pursuant to Section 17203, Smith should be required to disgorge to the Plaintiff, all fees he has earned, or will earn, from Fields as a result of the Smith Cover-up.

### Count III – Fraudulent Concealment

55. The Plaintiff realleges paragraphs 1-44 as if fully set out herein.

56. Illegal conduct is not protected by the litigation privilege. *Flatley v. Mauro* (2006) 39 Cal.4th 299.

57. Because the Smith's conduct violates California securities laws and the statute prohibiting Deceptive Acts, it is illegal as a matter of law and as undeserving of protection as the acts of extortion in *Flately*.

58. Smith has engaged in affirmatively deceitful conduct. *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282 (*rev. den.* 10/27/04). Smith has sought to conceal at

**PLAINTIFF'S VERIFIED COMPLAINT FOR AIDING AND ABETTING SECURITIES FRAUD, DECEPTIVE ACTS AND FRAUDULENT CONCEALMENT** 14

least the following facts which the Plaintiff had a right to uncover as both an investor and a litigant:

    (a) Financial statements related to TFG;

    (b) Documents related to the Koch Brothers merger partner and the timing and sequence of events leading to the collapse of the merger;

    (c) Documents related to Smith's compensation from TFG. (Collectively "the Concealed Facts").

59. Smith had a duty to disclose the Concealed Facts as an officer of the Court; pursuant to Business & Professions 6068 and pursuant to the CCPs governing discovery.

60. Smith prevented the Plaintiff from discovering the Concealed Facts.

61. The Plaintiff could not have otherwise known of the Concealed Facts.

62. Smith intended to deceive the Plaintiff in relation to the Concealed Facts.

63. The Concealed Facts were material to the Plaintiff and;

64. The Plaintiff was damaged by Smith's failure to disclose the Concealed Facts by losing his Expectancy of recovering in excess of $275,000 in cash flows from the fraudulent securities marketed by Fields.

WHERFORE, Plaintiff prays:

(a) That this Court award him his expectancy damages for the Defendants' violations of 25504 in an amount in excess of $275,000 to be determined at trial, plus an amount in exemplary damages to punish and deter the Defendants from committing such acts of securities fraud in the future;

(b) That this Court in its discretion award the Plaintiff his costs;

(c) That the Court require the Defendants to disgorge, pursuant to 17203 all fees earned or to be earned from Fields;

(d) That this Court require the Defendants to pay all damages proximately caused by their acts of Fraudulent Concealment and that this Court further impose exemplary damages to punish and deter the Defendants from concealing material facts in the future.

(e) For such other and further relief as this Court may deem just.

RESPECTFULLY SUBMITTED

_____
CARL A. WESCOTT, pro se
4/17/2019
SAN FRANCISCO

PLAINTIFF'S VERIFIED COMPLAINT FOR AIDING AND ABETTING    16
SECURITIES FRAUD, DECEPTIVE ACTS AND FRAUDULENT CONCEALMENT